UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

TINA DAVIDSON, ET AL.

versus                                             CIVIL ACTION NO. 12-1463
                                                   JUDGE TOM STAGG
GEORGIA PACIFIC LLC, ET AL.

---

### MEMORANDUM RULING

Before the court are two appeals of a ruling by Magistrate Judge Mark L. Hornsby granting the plaintiffs' motion to remand, one filed by defendant Georgia-Pacific LLC ("Georgia-Pacific") and the other filed by defendant CertainTeed Corporation ("CertainTeed") (collectively referred to as "the defendants"). See Record Documents 30 and 31. Both defendants request that this court reverse the magistrate judge's ruling and deny the plaintiffs' motion to remand. See id.

A.   **Standard Of Review.**

Any party may appeal a magistrate judge's ruling on a non-dispositive matter to a district court judge under Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 74.1. The decision by Magistrate Judge Hornsby to grant the plaintiffs' motion to remand is a non-dispositive matter. This action is not listed in 28 U.S.C. § 636(b)(1)(A) as one of the dispositive motions (often referred to as the "excepted motions") that a magistrate judge may not conclusively decide. See Maisonville v. F2 America, Inc., 902 F.2d 746, 747-48 (9th Cir. 1990). As part of the ordinary

appeal from a magistrate judge's ruling on a non-dispositive matter, the district judge may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

**B.    The Magistrate Judge's Ruling.**

For ease of reference, the court will restate the facts, as were well summarized in the magistrate judge's ruling. William Cleve Davidson ("Mr. Davidson") filed suit in state court in Orleans Parish, Louisiana, in May of 2010 against numerous defendants. He alleged that he suffered from mesothelioma after being exposed to asbestos-containing products during his employment. That case was removed to federal court in the Eastern District of Louisiana. Mr. Davidson died in October of 2011. Thereafter, a motion to dismiss the Eastern District case was filed, and granted, in lieu of substituting the proper parties as plaintiffs.

In April of 2012, Tina, Kathryn, and Kristen Davidson ("Plaintiffs") filed this lawsuit in Bossier Parish setting forth a survival and wrongful death action. Plaintiffs allege that they are the surviving widow and children of Mr. Davidson. The plaintiffs allege that Mr. Davidson was routinely exposed to asbestos and asbestos- containing products from approximately 1958 through 1978. This includes work performed by Mr. Davidson when he was a child and adolescent and worked for his grandfather's business, Atlas Sheet Metal Works, based in Bossier City, Louisiana. See Record Document 1, Petition at ¶ 10. The plaintiffs allege that Mr. Davidson also was exposed to asbestos while working for Hutches-Davidson Roofing & Universal

Heating and Air of Shreveport, Louisiana, where he was a roofer and sheet metal worker. In addition to other various locations of alleged exposure, the plaintiffs allege that Mr. Davidson received bystander exposure as an office worker to asbestos-containing insulation while employed by Poulan Chainsaw from approximately 1972 to 1978. The plaintiffs then assert specific claims against the various defendants. Count one includes allegations of strict liability, product liability, and negligence against the *manufacturing* defendants. These defendants are alleged to have engaged in the mining, processing, manufacturing, sale, design, installation, removal, and/or distribution of asbestos or asbestos-containing products. See id., Petition at ¶ 18. Count two includes allegations of strict liability, product liability, and negligence against the *supplier* defendants. These defendants sold, distributed, and supplied asbestos and asbestos-containing products. See id., Petition at ¶ 23. In count three, the plaintiffs assert negligence and other allegations, including failure to warn of the dangers of exposure to asbestos, against the *contractor* defendants.[1] These defendants are alleged to have produced, designed, sold, installed, removed, or otherwise put into the stream of commerce, asbestos and asbestos-containing products. See id., Petition, Ex. A. In count four, the plaintiffs allege strict liability, product liability, and negligence actions against all of the defendants. Finally, in count five, the plaintiffs allege that the defendants conspired amongst themselves to

---

[1] The emphasis, by the court, on the type of defendant is used to illustrate how wide-spread the plaintiffs' net of liability has been cast.

cause Mr. Davidson's injuries by exposing him to harmful and dangerous asbestos and asbestos-containing products.

One of the defendants, Georgia-Pacific, filed a notice of removal on the basis of diversity of citizenship. In the notice of removal, Georgia-Pacific alleged that two of the defendants, the J. Graves Insulation Company, f/k/a Graves-Aber Insulation Company, Inc. ("Graves") and Taylor-Seidenbach, Inc. ("Taylor") were improperly joined in the lawsuit to defeat diversity jurisdiction. Both Graves and Taylor, like the plaintiffs, are Louisiana citizens.

The plaintiffs filed a motion to remand, which was opposed by both Georgia-Pacific and CertainTeed. See Record Documents 15, 17 and 18. Magistrate Judge Hornsby granted the plaintiffs' motion to remand. See Record Documents 26 and 27. In his ruling, Magistrate Judge Hornsby detailed the law regarding improper joinder. He specifically discussed the "no reasonable basis" test that was applicable in the instant matter. After conducting a review of the parties' briefs, the arguments contained therein, and the attachments thereto, the magistrate judge found that the record was not appropriate for piercing the pleadings and thus conducted a Federal Rule of Civil Procedure 12(b)(6)-type analysis. He then concluded the plaintiffs' "allegations are sufficient to state a claim" and rejected Georgia-Pacific and CertainTeed's arguments that Graves and Taylor were improperly joined. See id. Thereafter, both Georgia-Pacific and CertainTeed appealed the magistrate judge's ruling to this court, requesting that this court reverse the magistrate judge's ruling and deny the plaintiffs' motion to

remand. See Record Documents 30 and 31.

C.  **This Court's Analysis.**

The Fifth Circuit has recognized two tests for establishing improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Larroquette v. Cardinal Health 200, Inc., 466 F.3d 373, 376 (5th Cir. 2006) (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)) (internal quotations and citation omitted). The first test does not apply here. The second test involves an inquiry into "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently, means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. (quoting Smallwood, 385 F.3d at 573) (internal citation omitted). Accordingly, this court must determine whether, in this case, there is arguably a reasonable basis for predicting that state law might impose liability on Graves and Taylor. See Smallwood, 385 F.3d at 573; Ross v. Citifinancial, Inc., 344 F.3d 458, 462 (5th Cir. 2003). This means that there must be a reasonable possibility of recovery, *not merely a theoretical one*. See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted) (emphasis added); Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286 n. 4 (5th Cir. 2000). Any contested issues of fact must be resolved in the plaintiffs' favor in an improper joinder analysis. See Cuevas v. BAC Home Loans

5

Servicing, 648 Fd. 3d 242, 249 (5th Cir. 2011).

The court may resolve the issue of improper proper joinder in one of two ways. First, the court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. See Smallwood, 385 F.3d at 573-74. Ordinarily, under this analysis, if a plaintiff could survive a Rule 12(b)(6) challenge, there is no improper joinder. However, there are cases in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. The Fifth Circuit cautions that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude a plaintiff's recovery against the in-state defendant. Any piercing of the pleadings should not entail substantial hearings. See id.

"The burden is on [the defendants] to establish fraudulent joinder and in order to do this, [the defendants] must 'put forward evidence that would negate a possibility of liability on the part'" of Graves and Taylor. McKee v. Kan. City S. Ry. Co., 358 F.3d 329, 333-34 (5th Cir. 2004) (quoting Travis v. Irby, 326 F.3d 644, 650 (5th Cir. 2003)). This court must take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiffs. See Travis, 326 F.3d at 649. However, and exceedingly relevant in the instant matter, the district court must also "take into account the 'status of discovery' and consider

what opportunity the plaintiff has had to develop its claims against the non-diverse defendant." McKee, 358 F.3d at 334 (quoting Travis, 326 F.3d at 649).

In this case, the defendants rely heavily upon the fact that the original plaintiff, Mr. Davidson, filed a nearly identical state court lawsuit and that the parties completed discovery over a period of eleven months, including a five-day deposition of Mr. Davidson, depositions of Mr. Davidson's co-workers and written discovery responses. During the discovery that occurred during that case, there was no mention of either Graves or Taylor. While the plaintiffs contend that discovery is just beginning *in this case*, they neglect to mention that eleven months of discovery has been conducted in the case that was pending before the Eastern District regarding Mr. Davidson's exposure to asbestos. The defendants further contend that there was no reason for the plaintiffs to file this case in state court other than to avoid federal court, citing the fact that the initial state court suit was successfully removed to federal court. In further support of this argument, the defendants point out that the plaintiffs filed a motion to dismiss the suit that was pending in the Eastern District in lieu of substituting the proper plaintiffs following Mr. Davidson's death, which was granted, dismissing the claims without prejudice.

The defendants also rely upon the deposition testimony of Mr. Davidson to establish that plaintiffs cannot maintain a cause of action against Graves and Taylor. During Mr. Davidson's deposition that occurred on June 18, 2010, Mr. Davidson stated:

Q. Okay. Do you have any reason to believe that you were exposed

> to any asbestos or asbestos-contained products when you worked for Poulan between that 19, you know, 72 or so to 1978 or '79?
>
> A. It's a possibility because being out in the plant a lot and there were repairs being done to equipment all the time, some big machinery, and, you know, it's very possible.

Record Document 31, Ex. B. During a deposition of Mr. Davidson that occurred on June 24, 2011, Mr. Davidson was further questioned about his time at Poulan:

> Q. One of the things that you said was that you saw repairs being done to machinery out at [Poulan]. Can you describe what machinery that was?
>
> A. Drills. You know, industrial-type drills, presses. I really can't remember beyond that.
>
> Q. And do you remember any of this machinery being insulated out at [Poulan]?
>
> A. I don't recall.
>
> Q. Do you remember insulated pipe being out at [Poulan]?
>
> A. I don't recall.
>
> Q. Do you ever remember seeing anybody doing any type of insulation work out at [Poulan]?
>
> A. No.

Id., Ex. C at 67-68. This testimony further supports the defendants' contention that the plaintiffs have no reasonable possibility of recovery against Graves or Taylor.

The defendants also vigorously attack the plaintiffs' use of an affidavit submitted

by their attorney. The evidence submitted by the plaintiffs to support their contention that Graves and Taylor were properly joined consisted of an affidavit of their attorney, Susannah Chester-Schindler ("Chester-Schindler"), and attachments to that affidavit, which consisted, inter alia, of excerpts of documents and depositions from an entirely separate case that was not related to the Davidson matter. For example, Chester-Schindler stated that it was her "understanding from working on asbestos-related suits in Louisiana since approximately 2008, that [Graves] and [Taylor] were the primary insulation contractors operating in the north-western region of Louisiana during the 1960s and 1970s." Record Document 15, Ex. B. Chester-Schindler later "concluded that, to the extent Mr. Davidson was exposed to asbestos insulation at Poulan Chainsaw, this insulation was **more likely than not** supplied, installed and repaired by Graves and Taylor." Id. (emphasis added).[2] Nowhere in the affidavit does Chester-Schindler provide a direct link from Graves and Taylor to Poulan.[3]

The defendants contend that the affidavit should not have been considered by the magistrate judge, citing De Aguilar v. Boeing Company, 11 F.3d 55 (5th Cir. 1993).

---

[2] The court notes that "more likely than not" is not the level of **personal knowledge** required to support an affidavit.

[3] Equally unimpressive is Chester-Schindler's reference to asbestos at the International Paper Mill in Bastrop, Louisiana. Judicial notice is taken of the geographic fact that Bastrop is in northeastern Louisiana, while Shreveport is in northwestern Louisiana. Thus, another tenuous attempt at drawing a connection between Poulan and Graves and Taylor based on counsel's "understanding" is flawed.

In <u>De Aguilar</u>, the Fifth Circuit stated, in the context of a motion to remand, that "the affidavit of a lawyer without personal knowledge of the extent of each of the plaintiffs' claims sheds little, if any, light on" the subject. <u>Id.</u> at 57-58. This court agrees with <u>De Aguilar</u> and finds that the attorney's affidavit, lacking in personal knowledge and based on nothing but sheer speculation and hearsay, should not have been considered.

However, even if this court were to consider the attorney's affidavit, it does nothing to bolster the plaintiffs' argument that a reasonable possibility of recovery against Graves or Taylor exists. As CertainTeed correctly argues, the plaintiffs' "attorney's affidavit did not give rise to any factual question sufficient to move [p]laintiffs' possibility of recovery out of the theoretical realm." Record Document 37 at 5. There is nothing to indicate a reasonable possibility that either Graves or Taylor sold or installed asbestos-containing insulation during the relevant time period or that there was any asbestos-containing insulation present at Poulan Chainsaw during the relevant time period.

All of the parties' submissions have been extensively reviewed and considered by this court. This analysis has not led the court to conduct a summary judgment-type analysis, as is rejected by <u>Smallwood</u>, nor has this court waded into a decision on the merits. There simply is nothing other than a theoretical possibility of recovery, at best, in this record that would allow the plaintiffs to recover from the in-state defendants, Graves and Taylor. If this court were to adopt the plaintiffs' arguments, virtually any person could be liable in any case. Therefore, this court concludes that the defendants

have carried their burden of establishing that the plaintiffs have no reasonable possibility of recovery from Graves or Taylor and that these parties were improperly joined. As detailed above, construing all appropriate inferences in favor of the plaintiffs, no evidence which would even arguably allow recovery against Graves and Taylor is found in this extensive record.

## CONCLUSION

After thoroughly considering the arguments contained in both Georgia Pacific and CertainTeed's appeals and the opposition thereto, the court disagrees with the reasoning of Magistrate Judge Hornsby's decision and finds that the conclusion reached was clearly erroneous. Accordingly, Magistrate Judge Hornsby's ruling (Record Documents 26 and 27) is **REVERSED**. Therefore, the motion to remand (Record Document 15) is **DENIED**. A finding of fraudulent joinder is tantamount to granting summary judgment dismissing the defendant who was fraudulently joined. See Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 102 (5th Cir. 1990) ("[S]ummary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery."). Accordingly, all claims against Graves and Taylor are **DISMISSED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 23rd day of April, 2013.

JUDGE TOM STAGG