UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TINA DAVIDSON, ET AL | CIVIL ACTION NO. 12-cv-1463 |
| versus | JUDGE STAGG |
| GEORGIA PACIFIC, LLC, ET AL | MAG. JUDGE HAYES |

**MEMORANDUM ORDER**[1]

Before the Court is a Motion for Clarification filed by Plaintiffs Tina Davidson, Kathryn Davidson, and Kristen Davidson Benoit, as well as a Motion to Strike filed by Defendants Georgia-Pacific LLC, Beazer East, Inc., CertainTeed Corporation, and Union Carbide Corporation. Plaintiffs first ask the Court to rule that their expert report disclosures are sufficient; in the alternative, Plaintiffs ask the Court for an extension of time in which to submit full Rule 26-compliant expert reports. Defendants ask the Court to strike Plaintiffs' expert witnesses. For reasons set forth below, Plaintiffs' first request, [doc. # 70], is **DENIED**, Plaintiffs' alternative request for an extension of time, [doc. # 70], is **GRANTED** in part and **DENIED** in part, and Defendants' Motion to Strike, [doc. # 84], is **GRANTED** in part and **DENIED** in part.

## Background

The above-captioned matter was originally filed in Orleans Parish as a personal injury action for Decedent William Cleve Davidson ("Decedent"). [*See* doc. # 70-3, p. 2]. Decedent

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

alleged that he was exposed to injurious levels of asbestos from products manufactured by Defendants. *Id.* On the eve of trial, the matter was removed to the United States Court for the Eastern District of Louisiana, and ultimately was transferred to the Eastern District of Pennsylvania. *Id.* There, Judge Robreno heard and denied Defendants' motions for summary judgment. *Id.*

Subsequently, on October 30, 2011, Decedent passed away. *Id.* Plaintiffs here, the surviving widow and children of Decedent, elected to file the instant wrongful death and survival action in the Civil District Court for the Parish of Bossier, State of Louisiana, alleging that they lost the love, affection, society, support, and services of Decedent as a direct and proximate result of Defendants' delictual conduct. [doc. # 1-2]. On June 1, 2012, Defendants removed the matter to the United States District Court for the Western District of Louisiana. [doc. # 1]. On June 17, 2013, Magistrate Judge Hornsby held a status conference and subsequently issued a scheduling order.[2] [doc. # 45]. On August 12, 2013, the matter was transferred to the undersigned. [doc. # 55].

The instant dispute centers around the timeliness and adequacy of Plaintiffs' expert witness reports. Plaintiffs aver that Judge Hornsby, at the aforementioned status conference, verbally instructed them to produce only supplemental expert reports—as opposed to full Rule 26(a)(2)(B) expert reports—by the August 30, 2013, deadline for submitting expert reports. [*See* doc. # 45, p. 1]. Plaintiffs contend that Judge Hornsby required them to submit only supplemental expert reports from their three expert witnesses, Mr. William Ewing, Dr. David Schwartz, and Dr. Arnold Brody, because "[e]xpert discovery regarding the fundamental facts

---

[2] On August 12, 2013, Magistrate Judge Hornsby recused himself. [doc. # 54].

2

underlying this action—namely what asbestos products [Decedent] was exposed to and what levels of exposure [Decedent] incurred from those products—was complete well in advance of his death . . . ." [doc. # 70-3, p. 4]. Aside from one supplemental report necessary to address a new issue stemming from Decedent's death, Plaintiffs contend that the preliminary reports, depositions, and affidavits that they produced in the prior state court proceeding fulfilled their duty to disclose expert reports in this proceeding. *Id.*

Pursuant to Judge Hornsby's verbal order, Plaintiffs submitted a supplemental report authored by Dr. Schwartz that detailed Dr. Schwartz's opinion on whether Decedent's treatment and costs of treatment in his final months of life were reasonable. *Id.* at 5. They submitted the supplemental report on August 2, 2013, twenty-eight days in advance of the August 30, 2013, deadline for submitting expert reports. [doc. # 84-2]. Notably, Defendants do not directly dispute[3] Plaintiffs' averment that Judge Hornsby verbally instructed Plaintiffs to produce only supplemental expert reports.[4]

On October 15, 2013, counsel for Defendant Georgia-Pacific, LLC, produced Defendant's expert reports and simultaneously informed Plaintiffs that "[w]e are submitting these reports even though plaintiffs have not submitted any expert reports in this matter, fully reserving our rights to supplement and/or amend these reports as well as object to any plaintiffs'

[3] Defendants argue that Plaintiffs' justification for failing to produce full expert reports is "fanciful." [doc. # 106, p. 2]. However, Defendants do not contest Plaintiffs' assertion that Judge Hornsby ordered Plaintiffs to submit only supplemental reports; instead, it appears that Defendants argue that Plaintiffs' interpretation of that order—that the order excused Plaintiffs from complying with Rule 26 and submitting full expert reports—is fanciful.

[4] Plaintiffs aver that they requested a transcript of Judge Hornsby's status conference but were informed that the conference was not transcribed. [doc. # 70-3, p. 4].

expert lacking a timely filed report as required by the scheduling order." [doc. # 70-1, p. 1]. Counsel for Defendant stated further, "[t]he Scheduling Order issued by the Magistrate . . . plainly states that all expert reports 'shall be in compliance with Rule 26(a)(2)(B).'" *Id.* Counsel's statements prompted Plaintiffs, on October 31, 2013, to file the instant Motion asking the Court to rule that the combination of their supplemental expert report and previous disclosures from the prior proceeding fulfills their expert report production obligations, absent a successful *Daubert* challenge. [doc. # 70-3, p. 1]. In the alternative, Plaintiffs request an extension of time to submit full Rule 26(a)(2)(B) reports. [doc. # 70-3, p. 7].

As a ruling in Plaintiffs' favor would essentially preempt any motion to strike Plaintiffs' expert witnesses, Defendants responded to Plaintiffs' Motion by filing a Motion to Strike in combination with their opposition to Plaintiffs' Motion. [doc. # 83]. Defendants contend that Plaintiffs have never submitted full Rule 26-compliant expert reports in this action or in a prior action. [doc. # 83, p. 6]. Defendants argue that discovery performed in a separate state court case, along with a brief letter opinion submitted in this action (Dr. Schwartz's supplemental expert report), cannot possibly satisfy Plaintiffs' federal disclosure requirements. *Id.* They contend further: This "is a newly filed action with new parties and new claims which is entitled to its own proceedings and procedural development. Defendants are entitled to a complete report which sets forth all of the opinions Plaintiffs' experts will offer at trial." *Id.* Consequently, Defendants argue, as Plaintiffs have not produced Rule 26-compliant expert reports and as the August 30, 2013, deadline for submitting expert reports has passed, Plaintiffs' experts should be barred from testifying at trial. *Id.* at 12.

The matter is now before the undersigned.

## Law and Analysis

### I. Plaintiffs Have Not Submitted Complete Rule 26 Expert Reports

The reports, affidavits, and depositions from the previous personal injury action that Plaintiffs produced and transmitted to Defendants do not constitute Rule 26-compliant expert reports. As Defendants state, Plaintiffs' appeal to this "inconsistent patchwork of opinions in the separate state court case" does not satisfy their duty of disclosure in this action. [*See* doc. # 83, p. 10].

Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose to the other parties the identity of any expert witness it may use at trial and to accompany this disclosure with a "written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony . . . ." FED. RULE CIV. P. 26(a)(2)(B). Further, "[t]he report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* The expert reports must be disclosed at the times that the court orders or, in the absence of a court order, "at least 90 days before the date set for trial or for the case to be ready for trial." *Id.*

§ (a)(2)(D). "The basic purpose of [Rule 26(a)(2)(B) ] . . . is to prevent unfair surprise with respect to the expert's testimony." *Davis v. Parker Drilling Co.*, 2003 WL 1824834, at *1 (E.D. La. Apr. 7, 2003) (citing *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 85 (5th Cir. 1994)). In addition, a "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Beane v. Util. Trailer Mfg. Co.*, 934 F. Supp. 2d 871, 877 (W.D. La. 2013) (citing *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742, n.6 (7th Cir. 1998)).

Here, the Court finds that Plaintiffs' disclosures thus far run afoul of the letter of the Rule as well as the basic purpose of the Rule.[5] First, Plaintiffs' disclosures violate the spirit of the Rule because the information in the various disclosures has been inconsistent. In other words, Plaintiffs' disclosures have not given Defendants the peace of mind that the Rule seeks to afford. Defendants explain Dr. Schwartz's inconstant opinions as follows:

> In [the first state court action] Plaintiff initially provided a report prepared by Dr. Schwartz. [doc. # 83-3]. Based on that report, Defendants deposed Dr. Schwartz. In that deposition, Dr. Schwartz acknowledged that his report did not contain any opinions regarding joint compound products or any Georgia-Pacific products specifically and when asked if he had any such opinions, he testified that he had no opinion as to joint compound exposure or any exposure to joint compound products manufactured by Georgia-Pacific. [doc. # 83-4]. Then, at a second deposition, without issuing a new report, Dr. Schwartz's opinions inexplicably changed.

---

[5] Despite Defendants' contentions, Rule 26 does not foreclose the possibility that an expert report from a previous proceeding could constitute a complete Rule 26 report in a new action. [*See* doc. # 84-1, p. 6]. This is because Rule 26 only specifies the deadline for which a report is due; it does not specify a starting date from which disclosures must begin and before which disclosures cannot occur. *See* FED. R. CIV. P. 26(a)(2)(D). Nevertheless, the Court need not reach this issue as the Court finds Plaintiffs' prior expert disclosures insufficient for other reasons.

6

> \* \* \*
>
> As the second deposition progressed, Dr. Schwartz indeed offered new opinions about joint compound work.  [doc. # 83-5].  Nevertheless, Georgia-Pacific relied upon that original report and the two depositions in its summary judgment motions in state court . . . .
>
> In opposition to Georgia-Pacific's motions, Plaintiffs provided in the form of an "Affidavit" a new twenty-four page expert report of Dr. Schwartz which contained a plethora of new opinions, including a new expansive section on joint compound products and causation opinions pertaining specifically to Georgia-Pacific. [doc. # 83-6]. This bait and switch was not lost on the state court judge when the chronology of events was explained. At the hearing on dispositive motions, the judge astutely observed "[t]he expert doesn't connect the dots for her (referring to counsel for Georgia-Pacific). And it really is unfair now for her to be ambushed. This is a classic ambush, I have to say as to Georgia-Pacific."  [doc. # 83-7].
>
> \* \* \*
>
> In addition to the new defendant-specific opinions, Dr. Schwartz's 24-page report included a totally new standard for causation. While the original three page Schwartz report spoke only of "each and every exposure to asbestos" contributing to the development of Mr. Davidson's mesothelioma, the new report spoke of exposures to Georgia-Pacific joint compound products and Koppers roofing products as "substantial contributing factors in his development of mesothelioma."  The "supplemental" Schwartz report submitted in this action re-adopts the original "each and every fiber" theory with no statement regarding substantial contributing factor.

[doc. # 83, p. 8-9, emphasis omitted].  Plaintiffs argue that Dr. Schwartz's reports were not inconsistent.  [doc. # 101, p. 3].  Plaintiffs tenuously argue that the first report did indeed reference exposure to joint compound products because Dr. Schwartz listed a group of tradesman that have historically worked with joint compound products.  Second, Plaintiffs argue that Defendants caused the delay in Dr. Schwartz's full report by delaying production of responsive discovery.  *Id.* at 4.  Third, Plaintiffs contend that Dr. Schwartz did not put forth a different standard for causation; instead, Plaintiffs contend that Defendants are simply confusing the concepts of expert opinion and the governing legal standard.  *Id.*  The two parties go on to debate

7

the consistency of expert Ewing's opinions in the same fashion.

Upon consideration, the Court finds that Plaintiffs' gradually developing opinions constitute the unfair surprise that Rule 26 was designed to prevent. The lengthy parry and riposte exhibited in the parties' briefs is the direct consequence of the inadequate expert disclosure. Plaintiffs' evolving expert opinions do not satisfy the "complete statement of all opinions" that Rule 26 mandates. Ultimately, Defendants are left to guess at which version of the previous opinions that Plaintiffs' have submitted will be proffered at trial.

Moreover, Plaintiffs' disclosures do not comply with the letter of the Rule. Neither Dr. Schwartz's original nor revised report provide his qualifications, publications, cases in which he has testified, or compensation. [*See* doc. #s 84-2, 84-4, 84-7]. In the same way, none of Mr. Ewing's disclosures outline his prior testimony in other cases. [*See* doc. #s 84-9, 84-10].

Accordingly, Plaintiffs' previous disclosures are insufficient to put Defendants on notice of the experts' opinions and thus do not amount to Rule 26-compliant reports. Defendants are entitled to a single, complete copy of all of the experts' opinions in this matter—as opposed to having to sift through the various reports and discovery from the previous state court proceeding. Plaintiffs' request to clarify the sufficiency of their expert report disclosures is **DENIED**.

### II. Defendants' Motion To Strike Is Granted In Part And Denied In Part; Plaintiffs' Alternative Request For An Extension Of Time Is Granted In Part And Denied In Part

Defendants ask the Court to strike Plaintiffs' experts, Dr. David Schwartz, Mr. William Ewing, and Dr. Arnold Brody from testifying because Plaintiffs have failed to submit Rule 26-compliant reports within the requisite time period. [doc. # 83, p. 12]. Plaintiffs argue that they were not required to submit full reports, or, in the alternative, that if they were required to submit

full reports, the deadline for producing expert reports should be extended because their failure to submit the reports was entirely justified. [doc. # 70-3, pp. 2-4; 7].

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). This Court has broad discretion in deciding whether a violation is substantially justified or harmless. *Barrett v. Atl. Richfield, Co.*, 95 F.3d 375, 380 (5th Cir. 1996). In exercising this discretion, the Court considers the following factors: "(1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony." *Id.* at 380. The goal of imposing the sanction of striking an expert witness is not to ameliorate prejudice, but rather to punish the offender and deter future dilatory conduct. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 573 (5th Cir. 1996).

A. Dr. Schwartz And Mr. Ewing

*i. Explanation for Failure to Comply with the Discovery Order*

Under the first factor, a court must consider the party's explanation for failing to comply with the court's scheduling instructions. Here, Judge Hornsby issued two instructions, one verbal and one written.[6] The verbal order instructed Plaintiffs to submit only a supplemental expert report, while the form order required the parties to submit full expert reports in

---

[6] To reiterate, Defendants do not directly contest Plaintiffs' averment that Judge Hornsby verbally ordered Plaintiffs to produce only a supplemental expert report.

compliance with Rule 26(a)(2)(B). [doc. # 45-1, p. 1]. As noted above, Plaintiffs attempted to comply with the verbal order by submitting a supplemental report, but failed to comply with the form order. Depending on which scheduling instruction was operative, Plaintiffs may not have failed to comply with Judge Hornsby's scheduling instruction at all.

The language in Rule 26 sheds light on the issue: "Unless otherwise stipulated or ordered by the court, [the identity of expert witnesses a party may use at trial] must be accompanied by a written report . . . ." FED. R. CIV. P. 26(a)(2)(B). As the Rule is written, Judge Hornsby was well within his authority to exempt the parties from the default provision of Rule 26 and to "otherwise" order the parties to submit only supplemental expert reports. *See id.* Consequently, the verbal order is the operative order.[7]

As noted, Plaintiffs attempted to comply with the Court's verbal order and submitted their supplemental expert report on August 2, 2013, well in advance of the August 30, 2013 deadline. While the undersigned finds it unlikely that Judge Hornsby's verbal order was intended to excuse the plaintiffs from bringing their previously produced expert reports into compliance with Rule 26 through the required supplemental report, the confusion created by the verbal order, the written order, the existence of prior reports, and the prior discovery which had taken place regarding the experts was such that some leeway is appropriate. Accordingly, Plaintiffs need not

---

[7] The Court's conclusion is undergirded by the observation that the contradictory form order appears to be just that, a standard form order. It is a standard, formulaic order issued to all parties irregardless of the subject of the dispute and includes information that is inapplicable to the instant dispute. For instance, it states that "[t]he attorneys shall keep the opposing side currently apprised of the medical condition of the plaintiff . . . ." [doc. # 45-1, p. 2]. Yet, the only plaintiff that had a medical condition is deceased. Thus, despite Defendants' contention, the fact that Judge Hornsby omitted the verbal instruction from the written order is of little significance. The discrepancy in the verbal order and the written order appears to simply be a product of oversight.

provide any explanation for failing to comply with the Court's standard form order.

Nevertheless, given that there is no transcript of Judge Hornsby's oral instructions, the Court will proceed to examine Plaintiffs' explanation for failing to comply with the form order to determine whether Plaintiffs' failure was substantially justified or harmless. In that vein, the Court finds, for the same reasons that the Court finds that the verbal order is operative, that Plaintiffs' proffered explanation for failing to comply with the order is reasonable. Plaintiffs were justified in relying on the verbal order because Rule 26 allowed Judge Hornsby to excuse the parties from submitting full reports. Moreover, it was entirely reasonable for Plaintiffs to rely on an instruction given directly from the Judge rather than complying with a standard, boilerplate form order that included instructions inapplicable to the instant dispute. Overall, consideration of this factor militates against granting Defendants' Motion.

*ii. The Prejudice to the Opposing Party of Allowing the Witnesses to Testify*

Plaintiffs produced their supplemental expert report twenty-eight days in advance of the August 30, 2013 deadline. Defendants were well aware that Plaintiffs were not in compliance with Rule 26 or the Judge's written order, yet Defendants waited until October 15, 2013, to bring their concerns to Plaintiffs' attention. [*See* doc. # 70-1, p. 1]. It appears that Defendants remained silent until the deadline for submitting expert reports passed "in hopes of parlaying an innocuous, easily-corrected omission into disallowance of [the experts'] testimony in its totality." *See Foreman v. Am. Road Lines, Inc.*, 623 F. Supp. 2d 1327, 1330 (S.D. Ala. 2008). As the court in *Foreman* stated, this type of "gamesmanship flies in the face of the spirit of cooperation and fair play that animates Rule 26 . . . ." *Id.* Defendants could possibly have avoided the issue entirely if they had simply brought their concerns to the Plaintiffs' attention earlier. In effect,

11

Defendants' tactics negate their assertions of prejudice.

### iii. The Importance of the Witnesses' Testimony

Initially, it is clear that the experts' testimony is important. As Plaintiffs' state, "Mr. Ewing's exposure assessment and Dr. Schwartz'[s] analysis thereof go directly to the crux of this dispute—whether Decedent was exposed to Defendants' products, and, if so, whether that exposure was sufficient to constitute a substantial contributing factor in the development of his disease." [*See* doc. # 70-3, p. 8]. Moreover, Mr. Ewing and Dr. Schwartz are the only two experts that Plaintiffs have designated to testify on these issues.[8] [*See* doc. # 83-11, p. 1-5].

The Fifth Circuit has taken two different approaches to the importance of a late-designated expert. In *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990), the Fifth Circuit noted that the importance of expert testimony underscores the need to designate the expert witness in a timely manner. Under the alternative approach, in *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707-08 (5th Cir. 2007), the Fifth Circuit commented that the more important the witness, the more the factor weighs in favor of allowing late designation. Nevertheless, under either approach, this factor favors the consideration of the experts' testimony because Plaintiffs designated Ewing and Schwartz as experts as early as February of 2011. [*See* doc. #s 70-6, 70-7].

After balancing all of the factors, the Court is of the opinion that Plaintiffs made a good faith attempt to comply with the operative verbal scheduling instruction. Further, the Court finds

---

[8] Plaintiffs have also designated Dr. Arnold Brody as a witness. However, as Plaintiffs state, "Dr. Brody is an expert retained purely to educate the jury with his specialized knowledge regarding how asbestos causes disease—he will not offer case specific testimony and merely informs the jury of the basics of human anatomy . . . ." [doc. # 92, p. 6].

that even if the written instruction had been operative, Plaintiffs were substantially justified in failing to comply with it. Accordingly, Defendants' Motion to Strike, with regard to the testimony of Dr. Schwartz and Mr. Ewing, is **DENIED** and the deadline for Plaintiffs to submit expert reports for Dr. Schwartz and Mr. Ewing will be extended. Further, as an extension of the expert report deadline will unduly compress other deadlines in the June 17, 2013, Scheduling Order, the Court is compelled to continue the current trial setting[9] and vacate the prior scheduling order.[10]

B. Dr. Arnold Brody

Defendants argue that Plaintiffs' third expert, Dr. Arnold Brody, should not be allowed to testify because Dr. Brody never produced a report of any sort. [doc. # 83, p. 12]. While conceding that Dr. Brody has not produced any form of expert report, Plaintiffs nevertheless argue that Dr. Brody should not be prevented from testifying because "[h]is testimony has been admitted in literally hundreds of cases dating back to the 1990s."

First, the Court observes that Plaintiffs failed to comply with Judge Hornsby's verbal order as well as his written order. Plaintiffs did not submit a supplemental report (as there was nothing to supplement) or a full Rule 26-compliant report. Plaintiffs' only explanation—which is essentially that the expert's opinions are well known—is unavailing. Plaintiffs' failure to explain their noncompliance with either scheduling order weighs in favor of striking Dr. Brody's

---

[9] A continuance is "the preferred means of dealing with" non-disclosure of expert reports. *Betzel*, 480 F.3d at 708.

[10] The final factor, the availability of a continuance, is of little relevance here because the Court has already ruled that a continuance is necessary. That said, the continuance will help to diminish any possible prejudice to Defendants and will permit the parties to prepare this case as it should have been prepared.

testimony. The parties' discussion of the remaining factors is minimal. Defendants make little showing of prejudice and Plaintiffs make little showing of the testimony's importance. Neither party addresses the possibility of curing any prejudice by granting a continuance.

Considering Plaintiffs' failure to explain their noncompliance with either scheduling order and failure to produce or attempt to produce any expert report whatsoever, the Court declines to extend the deadline for submitting expert reports as to Dr. Brody. Accordingly, Defendants' Motion to Strike, with respect to Dr. Arnold Brody, is **GRANTED**.

In short, the Court will allow Plaintiffs to submit single, complete, and Rule 26-compliant expert reports from Dr. Schwartz and Mr. Ewing only. Failure to provide all of the information required by Rule 26 for either expert will result in the exclusion of that expert's testimony at trial. If Defendants have a particularized concern with any future expert report disclosures they are ordered to notify Plaintiffs promptly and attempt to resolve the dispute amicably before bringing the matter before the Court.

## Conclusion

For the reasons stated above,

**IT IS ORDERED** that Plaintiffs' request to clarify the sufficiency of their expert report disclosures, [doc. # 70-3], is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike, [doc. # 84], is hereby **DENIED** as to Dr. David Schwartz and Mr. William Ewing but **GRANTED** as to Dr. Arnold Brody.

**IT IS FURTHER ORDERED** that Plaintiffs' alternative request for an extension of time in which to submit complete, Rule 26-compliant expert reports, [doc. # 70-3], is hereby

**GRANTED** as to Dr. David Schwartz and Mr. William Ewing but **DENIED** as to Dr. Arnold Brody.

**IT IS FURTHER ORDERED** that, because the extension of the deadline for submitting expert reports will upset other associated deadlines, **the existing scheduling order, [doc. # 45], is hereby vacated; the matter is continued**; and an amended scheduling order will issue in due course,

IT IS SO ORDERED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 6th day of January, 2014.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE