UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

TINA DAVIDSON, ET AL.

CIVIL ACTION NO. 12-1463

versus

JUDGE TOM STAGG

GEORGIA PACIFIC LLC, ET AL.

## MEMORANDUM RULING

Before the court are four motions for summary judgment, respectively filed by defendant CertainTeed Corporation ("CertainTeed"), defendant Beazer East, Inc. ("Beazer"), defendant Georgia-Pacific LLC ("Georgia-Pacific"), and defendant Union Carbide Corporation ("Union Carbide").[1] See Record Documents 113, 118, 122, and 124. Additionally pending before the court are three Daubert motions—the first two, filed by CertainTeed and Beazer, seek to exclude the testimony of the plaintiffs' causation expert, Dr. David Schwartz ("Dr. Schwartz"); the third, filed by Georgia-Pacific, seeks to exclude the testimony of both Dr. Schwartz and the plaintiff's industrial hygiene expert, William Ewing ("Ewing"). See Record Documents 114,

---

[1] For purposes of this memorandum ruling, the court will refer to CertainTeed, Beazer, Georgia-Pacific, and Union Carbide collectively as "the defendants."

116, and 123. For the reasons stated herein, CertainTeed's and Beazer's Daubert motions are **GRANTED**, Georgia-Pacific's Daubert motion is **GRANTED IN PART and DENIED IN PART AS MOOT**, and the defendants' motions for summary judgment are **GRANTED**.

## I. BACKGROUND

This case has a complex procedural history, as summarized in the court's previous memorandum ruling. See Record Document 111. The pertinent facts to the instant motions are as follows. Tina Davidson, Kristen Davidson, and Kathryn Davidson (collectively "the plaintiffs") are the wife and step-daughters of William Cleve Davidson ("Davidson"). Davidson was diagnosed with malignant mesothelioma in 2010 and died in 2011. The plaintiffs' complaint alleges that Davidson was exposed to asbestos from various products of the defendants, and that those exposures caused Davidson to develop mesothelioma. See Record Document 1, Ex. A. The court previously dismissed the plaintiffs' survival action because it had prescribed. See Record Document 111. The instant motions for summary judgment seek to dismiss all of the plaintiffs' remaining claims.

The instant Daubert motions filed by CertainTeed, Beazer, and Georgia-Pacific seek to exclude the testimony of Dr. Schwartz, the plaintiffs' causation expert. Dr. Schwartz has issued three reports relating to this case. See Record Document 114,

Exs. 5, 7, and 8. In his first report, dated December 23, 2010, Dr. Schwartz stated that "each and every exposure to asbestos contributed to the development of Mr. Davidson's mesothelioma." Id., Ex. 5 at 3. Dr. Schwartz's second and third reports are virtually identical. In his third report, Dr. Schwartz similarly concludes that "each and every exposure to asbestos above background levels contributed to the development of Mr. Davidson's mesothelioma." Id., Ex. 8 at 24. However, in that same report, Dr. Schwartz stated that he "do[es] not believe that every single asbestos **fiber** contributes to the development of mesothelioma." Id., Ex. 8 at 7 (emphasis in original). Additionally, Dr. Schwartz noted that mesothelioma "is a dose-response related disease; the more someone is exposed to asbestos, the greater their risk for the development of mesothelioma." Id., Ex. 8 at 10.

Dr. Schwartz has also been deposed on two occasions. During his first deposition, in March 2011 (after his first report but prior to his second report), when asked whether "every single exposure to asbestos above background is a substantial contributing factor to the cause of the mesothelioma," Dr. Schwartz testified that he "couldn't point to any specific cause as being the cause of mesothelioma." Record Document 113, Ex. 6 at 4. Additionally, when asked whether he would be able to identify any specific defendant's product as a substantial contributing factor of Davidson's mesothelioma, Dr. Schwartz stated "I don't know how I can answer that

3

question." Id., Ex. 6 at 4. Dr. Schwartz was then deposed in June 2011, after issuing his second report. In this second deposition, Dr. Schwartz testified that the "every exposure" theory includes all exposures to asbestos as a cause of mesothelioma because there is no way to know which exposures caused it and which ones did not. See Record Document 116, Ex. H at 3-4. Dr. Schwartz further testified that, in order to determine whether a particular exposure to asbestos is "substantial" or not, one would have to know the "frequency, duration, and proximity of exposure[.]" Id. at 7.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a

genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.  Asbestos Cases And The "Every Exposure" Theory Of Causation.**

The defendants[2] state two primary objections to Dr. Schwartz's testimony. First, they contend the "every exposure" theory of causation does not meet the standards of admissibility under Rule 702 and Daubert. Second, the defendants argue that the "every exposure" theory undermines the substantial factor test of causation that applies to toxic tort cases, including asbestos-related injuries. See Record Documents 115, 116, 123, and 124. The court will analyze these arguments in turn.

---

[2] Although Union Carbide did not file a Daubert motion to exclude Dr. Schwartz's testimony, it similarly argues in its motion for summary judgment that his testimony is insufficient to establish causation, an essential element of the plaintiffs' claim. See Record Document 124, Memorandum in Support at 15-16.

1. **Rule 702 And Daubert.**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702"), which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> 
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has held that Rule 702 requires the trial judge to act as a gatekeeper to ensure that all expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993). This gatekeeper function applies to all forms of expert testimony. See Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999). As a gatekeeper, a court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152, 119 S. Ct. at 1176. "However, 'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise

bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" Stevens v. Energy XXI GOM, LLC, No. 11-154, 2013 WL 4051036 at *2 (M.D. La. Aug. 9, 2013)(quoting Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009)). The party seeking to have an expert's testimony admitted bears the burden of proving its admissibility. See Seaman v. Seacore Marine L.L.C., 326 F. App'x 721, 724 (5th Cir. 2009); Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998).

The first prong of Daubert focuses on the reliability of the expert's testimony. See Daubert, 509 U.S. at 589-90, 113 S. Ct. at 2795. The court must determine whether the reasoning or methodology underlying the expert's testimony is valid. See Moore, 151 F.3d at 276. Daubert identified a number of factors that are useful in assessing whether an expert's testimony is reliable, including testing and testability, peer review and publication, evaluation of known rates of error, and general acceptance within the scientific community. See Daubert, 509 U.S. at 593-94, 113 S. Ct. at 2796-97.

The second prong of Daubert focuses on whether the expert's testimony will assist the trier of fact in understanding the evidence or determining some fact at issue in the case. See id. at 591-92, 113 S. Ct. at 2795-96; In re Air Crash Disaster at New Orleans, La., 795 F.2d 1230, 1233 (5th Cir. 1986)("[T]he trial judge ought to insist

that a proffered expert bring to the jury more than the lawyers can offer in argument."). In other words, the court must determine not only if the expert's testimony is reliable, but also whether it is relevant. One common reason to exclude expert testimony under this second prong is when the expert will testify to issues a lay juror has no trouble understanding. Expert testimony is not needed when issues are within the common knowledge of the jury. See Salem v. U.S. Lines Co., 370 U.S. 31, 35, 82 S. Ct. 1119, 1122 (1962).

The defendants contend that numerous federal and state courts have excluded the "every exposure" theory under Rule 702 and Daubert because it is not reliable, cannot be tested, has no known rate of error, and is, essentially, mere speculation. One such court is the United States District Court for the District of Utah, in two recent cases, Anderson v. Ford Motor Company, 950 F. Supp. 2d 1217 (D. Utah 2013) and Smith v. Ford Motor Company, No. 2:08-630, 2013 WL 214378 (D. Utah Jan. 18, 2013). In both cases, the plaintiffs' experts were expected to testify that every exposure to asbestos caused the decedent's mesothelioma. See Anderson, 950 F. Supp. 2d at 1219-21; Smith, 2013 WL 214378 at *1. However, neither expert could identify a particular defendant's product as having caused the decedent's mesothelioma. See Anderson, 950 F. Supp. 2d at 1222; Smith, 2013 WL 214378 at *3. The court granted Daubert motions excluding the experts from testifying, finding

the "every exposure" theory inadmissible under Rule 702 and Daubert because it is based on insufficient data, is not testable, and has no known error rate. See Anderson, 950 F. Supp. 2d at 1224-25; Smith, 2013 WL 214378 at *2-3. Additionally, the court in Smith noted that the "every exposure" theory appears to be internally inconsistent because the expert testified that he did not believe every asbestos fiber a person inhales contributes to mesothelioma, yet concluded that each of the defendant's products was a contributing factor. See Smith, 2013 WL 214378 at *4.

Another case that the defendants rely on is Sclafani v. Air and Liquid Systems Corporation, No. 2:12-3013, 2013 WL 2477077 (C.D. Cal. May 9, 2013). The court in Sclafani ruled on a number of motions in limine, one of which sought to preclude the plaintiffs' expert from testifying that "every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease." Sclafani, 2013 WL 2477077 at *4 (internal quotations omitted). The court granted the defendants' motion in limine to exclude the expert's testimony, noting that the theory was not supported by data, could not be tested, and was not published in peer-reviewed works. See id. at *5.

The defendants also cite Butler v. Union Carbide Corporation, 310 Ga. App. 21 (Ga. Ct. App. 2011). In Butler, as in the instant case and the cases discussed

9

above, the plaintiffs' expert intended to testify that every exposure to asbestos contributed to the decedent's mesothelioma, but the expert could not identify any particular defendant's product as a cause. See Butler, 310 Ga. App. at 26. The trial court excluded the expert's testimony, holding that the theory was not testable and had no error rate, and therefore failed to satisfy two of the Daubert factors. See id. at 24. The appellate court affirmed the trial court's exclusion of the expert's testimony. See id. at 30. Moreover, the appellate court affirmed the trial court's granting of summary judgment to the defendants on the basis that, without the expert's testimony, the plaintiffs could not satisfy their burden of proof on causation. See id. at 3031.

This court agrees with the defendants. The "every exposure" theory is not testable, and consequently cannot have an error rate, thus failing to satisfy two Daubert factors. Having reviewed all of Dr. Schwartz's reports and his prior deposition testimony, the court cannot find any data that Dr. Schwartz relied on that would show that any particular defendant's product actually caused Davidson to develop mesothelioma. "Just because we cannot rule anything out does not mean we can rule everything in." Smith, 2013 WL 214378 at *3. Additionally, the court finds that Dr. Schwartz's testimony appears to be internally inconsistent. Like the expert in Smith, Dr. Schwartz cannot specifically identify any particular defendant's product

as having caused Davidson's mesothelioma, yet he concludes that every exposure was a substantial contributing factor. Therefore, the court finds that Dr. Schwartz's testimony that every exposure to asbestos contributed to the decedent's mesothelioma is inadmissible under Rule 702 and Daubert.

2. **Toxic Torts And The "Substantial Factor" Test Of Causation.**

Even assuming that Dr. Schwartz's testimony was admissible under Rule 702 and Daubert, the defendants further argue it should be excluded because it undermines Louisiana law on causation in asbestos cases. Under Louisiana law, a plaintiff in an asbestos case "must show, by a preponderance of the evidence, he was exposed to asbestos and he received an injury substantially caused by that exposure." Rando v. Anco Insulations, Inc., 16 So. 3d 1065, 1088 (La. 2009). When there are multiple alleged causes of injury, "a defendant's conduct is a cause-in-fact if it is a **substantial factor** generating plaintiff's harm." Id. (emphasis added). "[N]egligent conduct is a substantial factor if the harm would not have occurred without the conduct, i.e., but for the defendant's conduct, plaintiff would not have sustained injury." Id. at 1089. The plaintiff's burden of proof is not relaxed in asbestos cases, even though it is often difficult to prove each defendant's product caused the injury because of the long-latency period. See id. at 1091.

The defendants argue that the "every exposure" theory conflicts with and

11

undermines the "substantial factor" causation test. No Louisiana case cited by either party squarely addresses the admissibility of an expert's testimony regarding the "every exposure" theory and the "substantial factor" test. However, the defendants rely on two federal court decisions that have addressed this issue.

The first case, discussed previously in the Daubert context, is Sclafani. In addition to claiming the plaintiffs' expert's testimony regarding the "every exposure" theory was inadmissible under Daubert, the defendants also moved to exclude the expert's testimony because of its apparent conflict with California law, which applies the "substantial factor" test for causation in asbestos cases. See Sclafani, 2013 WL 2477077 at *4. The court held that admitting the expert's testimony "would render the 'substantial factor' prong of the causation test meaningless." Id. Specifically, the court found that if the "every exposure" theory was admissible, then asbestos plaintiffs would merely have to show that they were exposed to asbestos products at some point in their life and they subsequently developed an asbestos-related injury. See id.

The second case to address this issue is Lindstrom v. A-C Product Liability Trust, 424 F.3d 488 (6th Cir. 2005). In Lindstrom, the plaintiff's expert submitted an affidavit regarding the "every exposure" theory as to asbestos and mesothelioma. The case was decided under maritime law, which also applies a "substantial factor"

test for causation. See Lindstrom, 424 F.3d at 492. The trial court granted summary judgment to certain defendants, holding that if the expert's testimony was sufficient for the plaintiff to satisfy his burden of proof, "the Sixth Circuit's 'substantial factor' test would be meaningless." Id. at 493. The Sixth Circuit affirmed the granting of summary judgment, finding that the "every exposure" theory "does not provide a basis for a causation finding as to any particular defendant. A holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion." Id.

This court finds that the "every exposure" theory conflicts with the "substantial factor" test of causation that applies under Louisiana law. If a plaintiff could establish causation with the "every exposure" theory, then every exposure to asbestos would be deemed a substantial factor, no matter the "frequency, duration, and proximity of exposure," all of which are factors that Dr. Schwartz has testified are relevant to determining causation. See Record Document 116, Ex. H at 7. It would therefore be inconsistent with Louisiana law to admit the "every exposure" theory. Therefore, having found the "every exposure" theory inadmissible under Rule 702, Daubert, and Louisiana law, the Daubert motions filed by CertainTeed, Beazer, and Georgia-Pacific are hereby **GRANTED** as to Dr. Schwartz's testimony that every exposure to asbestos is a substantial contributing factor to the development of

mesothelioma.[3]

## C. Whether The Exclusion Of Dr. Schwartz's Testimony Entitles The Defendants To Judgment As A Matter Of Law.

Having found that Dr. Schwartz's testimony regarding the "every exposure" theory is inadmissible, the immediate question is whether the plaintiffs can create a genuine dispute of material fact as to causation without his testimony. This court finds that they cannot. The Fifth Circuit has held that expert testimony is required to establish causation in toxic tort cases. See Seaman, 326 F. App'x at 723, 729. The exclusion of Dr. Schwartz's testimony leaves the plaintiffs without any expert testimony regarding causation, an essential element of their causes of action against the defendants. The absence of expert testimony regarding causation precludes the plaintiffs from creating a genuine dispute of material fact as to this element. See Knight v. Kirby Inland Marine Inc., 482 F.3d 347 (5th Cir. 2007)(affirming the trial court's grant of summary judgment to defendants where the plaintiffs' expert's testimony was excluded, finding there was insufficient evidence as to causation); Wannall v. Honeywell Int'l, Inc., 292 F.R.D. 26 (D.D.C. 2013)(granting summary

---

[3] Because the court finds, as discussed below, that the exclusion of Dr. Schwartz's testimony entitles the defendants to judgment as a matter of law, the court finds no reason to rule on the admissibility of Ewing's testimony. Therefore, Georgia-Pacific's Daubert motion as to Ewing's testimony is **DENIED AS MOOT**.

14

judgment to the defendant and finding insufficient evidence as to causation where the plaintiff's expert testified that all of the decedent's exposures to asbestos caused his cancer). Therefore, because there is no genuine dispute of material fact as to causation, the motions for summary judgment filed by CertainTeed, Beazer, Georgia-Pacific, and Union Carbide are **GRANTED** and all of the plaintiffs' claims against these defendants are **dismissed with prejudice.**

**D.   The Pending Third Party Complaints Are Hereby Dismissed.**

Pending before the court are two third party complaints, one filed by CertainTeed and Beazer, and the second filed by Georgia-Pacific, both filed against the Celotex Asbestos Settlement Trust ("Celotex") and the Claims Resolution Management Corporation ("CRMC"). See Record Documents 49 and 51. Both third party complaints were filed to seek indemnity in the event that CertainTeed, Beazer, or Georgia-Pacific was found liable to the plaintiffs. See Record Documents 49 and 51. Having granted summary judgment to CertainTeed, Beazer, and Georgia-Pacific, their third party complaints against Celotex and CRMC are now **MOOT.** Therefore, the third party complaints are **DISMISSED.**

### III. CONCLUSION

For the foregoing reasons, the Daubert motions filed by CertainTeed and Beazer are **GRANTED**, and the Daubert motion filed by Georgia-Pacific is

**GRANTED IN PART and DENIED IN PART AS MOOT.** Additionally, the defendants' respective motions for summary judgment are **GRANTED** and all of the plaintiffs' claims against CertainTeed, Beazer, Georgia-Pacific, and Union Carbide are **DISMISSED WITH PREJUDICE.** Moreover, the pending third party complaints against Celotex and CRMC are **DISMISSED.**

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 11th day of July, 2014.

_____
JUDGE TOM STAGG